IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Nationwide Mutual Insurance Company<br>One Nationwide Plaza<br>Columbus, Ohio 43215<br><br>Nationwide Life Insurance Company<br>One Nationwide Plaza<br>Columbus, Ohio 43215<br><br>　　　　Plaintiffs,<br><br>　　v.<br><br>Nationwide Benefit Plans, Inc.<br>2701 Troy Center Drive<br>Suite 230<br>Troy, MI 48084<br><br>William M. Ferguson<br>149 Florence<br>Troy, MI 48098<br><br>John Does, 1 through 50.<br><br>　　　　Defendants. | Case No. **C2 06 76**<br><br>Judge **JUDGE SARGUS**<br><br>Magistrate **MAGISTRATE JUDGE KING** |

## COMPLAINT FOR TRADEMARK INFRINGEMENT AND
## FALSE DESIGNATION OF ORIGIN

Plaintiffs Nationwide Mutual Insurance Company and Nationwide Life Insurance Company, d/b/a Nationwide Health Plans, (collectively "Nationwide"), for their complaint against defendants Nationwide Benefit Plans, Inc., William M. Ferguson, and as-yet unknown corporate and individual John Doe defendants (collectively, "NBP") state as follows:

## **NATURE OF THE ACTION**

1. Nationwide Is On Your Side. Most people who hear that phrase, or the famous jingle that accompanies it, associate it immediately in their minds with Nationwide and its insurance and financial products.

2. Indeed, since 1955, Nationwide has offered various types of insurance products under the Nationwide mark.

3. Now, over 50 years later, when consumers hear about "Nationwide Insurance" they associate it immediately with Nationwide and its products.

4. Consumers purchasing health insurance through Nationwide Benefit Plans, which purports to do business in Michigan, Wisconsin, Indiana, Ohio and Texas, will be deceived or confused into believing they are dealing with Nationwide and have purchased insurance with the financial backing, customer service and reliability that the Nationwide products offer.

5. It is not difficult to imagine the shock consumers suffer when they learn that the company they are dealing with is not the same Nationwide they have known and trusted for years.

6. The NATIONWIDE mark is used by Plaintiffs to identify a wide variety of insurance services, including health insurance. The good will and consumer recognition of the NATIONWIDE mark is the product of a deep and longstanding commitment to providing exceptional insurance and financial services products.

7. Defendants' unauthorized use of the NATIONWIDE name and mark to sell health insurance is undermining Nationwide's efforts to develop, maintain and protect the goodwill associated with the Nationwide name and mark.

2

## THE PARTIES

8.  Nationwide Mutual Insurance Company is a mutual insurance company organized under the laws of the State of Ohio with its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

9.  Nationwide Life Insurance Company is a corporation organized under the laws of the State of Ohio with its principal place of business at One Nationwide Plaza, Columbus, Ohio 43215.

10. Nationwide Life Insurance Company and Nationwide Mutual Insurance Company underwrite health insurance products that are sold under the mark NATIONWIDE HEALTH PLANS.

11. Nationwide has engaged in the business of providing numerous types of insurance and financial services throughout the United States for more than 75 years, the last 50 years of which have been under the trademark Nationwide.

12. Nationwide Benefit Plans, Inc., upon information and belief, is a corporation organized on or about September 22, 1998, under the laws of the state of Michigan with a principal place of business located at 2701 Troy Center Drive, Suite 230, Troy, Michigan 48084.

13. William M. Ferguson, upon information and belief, is an individual resident of the state of Michigan with an address, according to records kept by the Ohio Department of Insurance, of 149 Florence, Troy, Michigan 48098.

14. William M. Ferguson, upon information and belief, is licensed to sell accident, life and health insurance in the state of Ohio and has listed Nationwide Benefit Plans, Inc. as his Agency Association with the Ohio Department of Insurance.

15. William M. Ferguson, upon information and belief, is also the President of Nationwide Benefit Plans, Inc.

16. John Does 1 - 50 are individuals and associated entities of NBP who are either agents selling insurance using the Nationwide Benefit Plans name or a Nationwide mark or who have otherwise participated in and profited from the acts complained of herein. This complaint will be amended to include them as their names and addresses become known.

## JURISDICTION AND VENUE

17. This is an action for infringement of trademarks registered under the Federal Trademark Act (the "Lanham Act"), 15 U.S.C. § 1051 et seq., 15 U.S.C. § 1114(a) and false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a).

18. This court has jurisdiction over this matter under 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338. Venue is proper in this Court under 28 U.S.C. § 1391(b).

## BACKGROUND FACTS

### The Famous Nationwide Marks

19. Nationwide was founded in Columbus, Ohio in 1926 under the name Farm Bureau Mutual Automobile Insurance Company ("FBM"). By the 1930s, FBM was offering fire insurance and life insurance along with automobile insurance, and in 1942, FBM added health insurance to its product line.

20. In 1955 FBM adopted the name "Nationwide," and began offering its casualty, automobile, life and health insurance under the Nationwide service mark. Since 1955, Nationwide has continuously offered casualty, automobile, life and health insurance services under the Nationwide service mark and today offers a full line of property and casualty, commercial, homeowners, automobile, motorcycle, life, health, group accident, fire and disability insurance. Nationwide offers various insurance services under the Nationwide mark in all fifty states.

21. Nationwide owns, among others, the following federally registered trademarks and service marks for use in connection with insurance services:

> NATIONWIDE- Registration No. 854,888, registered August 13, 1968, for underwriting and sale of all lines of insurance, including fire, life, and casualty;
>
> NATIONWIDE (and design)- Registration No. 2,371,088, registered July 25, 2000, for insurance services, namely, underwriting and brokerage of life, health, annuity, fire, property and casualty insurance; and financial services, namely distribution and brokerage of mutual funds, money market funds, pension plans, and IRA plans;
>
> NATIONWIDE HEALTH PLANS- Registration No. 2,369,723, registered July 25, 2000, for organizing and administering preferred provider programs in the field of health care services; and health care services in the nature of a health maintenance organization and consultation related thereto; and
>
> NATIONWIDE IS ON YOUR SIDE- Registration No. 1,793,850, registered September 21, 1993, for insurance services; namely, underwriting life, health, annuity, property and casualty insurance; financial services; namely, the sale of mutual funds, money market funds, pension plans and IRA plans.

Certified copies of the certificates of registration for each of these trademarks (collectively, the "Nationwide Marks") are attached to this complaint as Exhibit A.

22. The certificates of registration identified in the preceding paragraph are valid and subsisting, and Nationwide owns record title to the registered trademarks described above.

23. The certificates of registration are prima facie evidence of the validity of the registered trademarks, Nationwide's ownership of the registered trademarks, and Nationwide's exclusive right to use the registered trademarks in connection with the goods and services specified in the certificates of registration enumerated above, as well as constructive notice of the registrant's claim of ownership. 15 U.S.C. § 1115(a); 15 U.S.C. § 1072.

24. Registration numbers 854,888 and 1,793,850 are incontestable, which is conclusive evidence of their validity under 15 U.S.C. § 1115(b).

25. In addition to the above federally registered Nationwide Marks, Nationwide also owns state trademark registrations of various Nationwide marks in over forty (40) states, including Michigan, Wisconsin, Indiana, Ohio and Texas.

26. Plaintiffs have used Nationwide as a trademark and service mark continuously in connection with Plaintiffs' insurance services since 1955.

27. Plaintiffs have also used well-known slogans in connection with the promotion, marketing and sale of its insurance products, including the registered trademark "Nationwide Is On Your Side", Registration Number 1,793,850.

28. Nationwide has used the Nationwide Marks in connection with the offering of insurance services and currently has more than 9,000 exclusive authorized Nationwide insurance agents and more than 160,000 non-exclusive registered representatives who sell Nationwide products, including various insurance and financial services, throughout the United States.

29. Nationwide maintains strict control over the use of the Nationwide Marks by its authorized insurance agents and registered representatives. Nationwide's insurance services are offered to the public only through Nationwide, its authorized insurance agents and the registered representatives.

30. Since 1955, the Nationwide insurance products and services have been advertised extensively throughout the United States in print media, on radio and television and sponsorship of public events. Because of this extensive and uniform promotion, marketing and advertisement, the general public and those persons interested in purchasing insurance services have come to associate the Nationwide Marks with Nationwide's insurance products and services.

31. From 1998 through 2005, Nationwide expended over $398 million on advertising, marketing and promotional materials with the Nationwide Marks in connection with offering insurance and financial products and services, through print ads, television, radio, sponsorship of the PGA "Nationwide" golf tour and other means throughout the United States. In addition, the advertising budget for Nationwide Mutual Insurance Company for 2006 is over $178 million.

32. In addition, Nationwide supports an advertising cooperative for the benefit of its authorized agents in which Nationwide matches up to fifty percent (50%) of the advertising funds spent by agents in advertising Nationwide's insurance services under the Nationwide Marks.

33. Since 1980, Nationwide has contributed in excess of $71 million to the cooperative advertising fund, matching in excess of $71 million spent by the authorized agents, themselves, in advertising Nationwide's insurance products and services, for an additional total of more than $142 million spent on promoting goods and services under the Nationwide Marks since 1980.

34. Nationwide offers its insurance services under the Nationwide Marks directly to consumers via the telephone, internet (at nationwide.com, nationwidehealthplans.com and other domains) and direct mail, as well as through agents, independent brokers and other retail and wholesale service organizations, such as banks and investment brokerage firms.

35. Since 2000 Nationwide has issued more than 47 million Auto and Property policies in 46 states. In Texas, Wisconsin, Indiana, Ohio and Michigan alone Nationwide has issued over 8.8 million policies and over 1756 health policies in Ohio and California. In addition, Nationwide currently has assets of $157 billion.

36. The advertising, marketing and promotion of Nationwide's insurance products and services through the use of the Nationwide Marks for more than fifty (50) years has caused the consumer to recognize the Nationwide mark as an indicator of quality insurance products and service, and seek out and purchase Nationwide insurance products and services rather than those of other providers.

37. The extensive advertisement and promotion of the Nationwide Marks throughout the United States have made the Nationwide Marks extremely well known in connection with quality insurance products and services.

38. Nationwide's extensive financial and insurance operations under the Nationwide Marks have made it the largest administrator of qualified retirement plans for public and private sector, (end of 2003), the fifth largest provider of variable life insurance (end of 2003), the fourth largest U.S. homeowner insurer (end of 2004), the sixth largest U.S. auto insurer (end of 2004) and the seventh largest property and casualty insurer (end of 2004). In addition, Nationwide is currently 99th on the Fortune 500 list, and 297th on the Global 500 listing.

39. The Nationwide Marks have become and are associated solely and exclusively with Nationwide in the minds of consumers for insurance services.

## Nationwide Health Plans

40. Nationwide Health Plans ("NHP") is the name under which Plaintiffs Nationwide Life Insurance Company and Nationwide Mutual Insurance Company sell health insurance products. Nationwide has provided health insurance coverage in Ohio since the 1950's.

41. NHP's health insurance products and services include Preferred Provider Plans (PPO), Major Medical - Indemnity Plans, Medicare Supplement, Prescription Cards, Dental and other accident and health products.

8

42. Nationwide Health Plans has more than 10,000 independent and authorized Nationwide Health Plans agents throughout the United States offering Nationwide's various lines of health related insurance. NHP also operates a website at www.nationwidehealthplans.com where customers can obtain information on the various NHP services, and download application forms and provider directories.

43. Since 2002, NHP has spent more than $1.6 million on advertising and promoting NHP's health insurance plans under the Nationwide Marks.

44. During the past 5 years, Nationwide has covered over 650,000 lives under its health plans and has collected approximately $1.5 billion in premiums on its issued health insurance policies.

### Defendants' Infringing Activities

45. Upon information and belief, Defendants offer a variety of health insurance services under the name "Nationwide Benefit Plans" in the states of Ohio, Michigan, Wisconsin, Indiana and Texas, including via agents located in those states and via the Internet at the website of www.nationwidebenefitplans.com. Printouts of NBP's website are attached as Exhibit B.

46. None of the defendants in this case are authorized insurance agents or registered representatives of Nationwide.

47. NBP markets its insurance products under the Nationwide Benefit Plans name, with the NATIONWIDE portion of the name prominently displayed on the website.

48. NBP and its agents offer identical products to Nationwide Health Plans in that it offers PPO health plans with prescription drug benefits, dental insurance, optional term life insurance, accidental death and dismemberment insurance and supplemental accident benefits.

9

49. In addition NBP's website offers information and an application for membership to "Taxpayers Network Inc." whose members receive special insurance discounts on various insurance products.

50. Defendants market their insurance products to some of the same classes of customers as those who would be interested in purchasing health insurance through Nationwide – namely individuals and families.

51. Defendants' use of the Nationwide Marks to market health insurance products creates a likelihood of confusion in that consumers are likely, after encountering the Nationwide Benefit Plans name and mark, to assume Defendants are sponsored by, endorsed by, or affiliated with Nationwide.

52. On September 16, 2005, Nationwide's outside counsel sent NBP a letter demanding that it cease all use of the Nationwide name and mark in connection with selling insurance products and services. A copy of the September 16, 2005 letter is attached as Exhibit C.

53. After receiving no response, on September 27, 2005 Nationwide's outside counsel sent a follow-up letter to NBP. A copy of the September 27, 2005 letter is attached as Exhibit D.

54. On October 3, 2005, Nationwide's outside counsel received a letter from Scott D. Norton of Norton & Norton, NBP's outside counsel. The letter indicated that William Ferguson, NBP's principal, "had been in the insurance business in various parts of the country for over twenty years," but "until recently" had no knowledge of Nationwide. A copy of the October 3, 2005 letter is attached as Exhibit E.

55. On November 8, 2005, Nationwide's outside counsel responded to Mr. Norton's letter, questioning how someone involved in the insurance business for twenty years could not

have heard of Nationwide, one of the country's largest insurers, and requesting further response. A copy of the November 8, 2005 letter is attached as Exhibit F.

56. Neither Mr. Norton, nor NBP, ever responded to the November 8, 2005 letter, necessitating the filing of this lawsuit.

## COUNT ONE
## TRADEMARK INFRINGEMENT

57. Nationwide incorporates the allegations contained in paragraphs 1 through 56 as if fully restated herein.

58. Upon information and belief, Defendants' uses of the Nationwide Marks in connection with the sale of health insurance and other insurance products was with knowledge of Nationwide's long-standing 50 year use of its federally registered trademarks.

59. Defendants' use of the Nationwide Marks will create a likelihood of confusion through an association of sponsorship, affiliation or endorsement by Nationwide in an appreciable number of the consumers of the insurance products and services offered by Defendants.

60. Consumers who view the website located at www.nationwidebenefitplans.com, or who view any promotional materials circulated by Defendants with the Nationwide Benefit Plans name and mark in connection with the offering of insurance products and services, will assume that Nationwide is somehow affiliated with, has underwritten or has licensed Defendants to sell Nationwide insurance products, which is false.

61. The goodwill of the Nationwide Marks is of enormous value, and Nationwide is and will continue to suffer immediate and irreparable harm should Defendants' unauthorized offering of insurance products and services under the NATIONWIDE mark and their use of the Nationwide mark on the www.nationwidebenefitplans.com website continue.

62. The acts of Defendants in their unauthorized use of NATIONWIDE in connection with insurance products and are intended to and will divert to the Defendants the benefit of the business reputation and goodwill symbolized by the Nationwide Marks which belong exclusively to Nationwide and, under license to its authorized Nationwide insurance agents and registered representatives. Such acts will confuse potential NBP customers into thinking that NBP is somehow backed by, underwritten by, licensed by, endorsed by, sponsored, affiliated with or connected with Nationwide.

63. Defendants' use of materials bearing the Nationwide Marks, and offering their insurance products and services over the Internet will likely continue unless enjoined by this Court.

64. Nationwide is entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including, but not limited to, compensatory damages; treble damages; disgorgement of profits; corrective advertising and costs and attorney's fees.

## COUNT TWO
## FALSE DESIGNATION OF ORIGIN

65. Nationwide incorporates the allegations contained in paragraphs 1 through 64 as if fully restated herein.

66. Defendants' use of the NATIONWIDE mark in connection with its offering of insurance products and services falsely represents that such products and services originate with, are sponsored, underwritten by or licensed by Nationwide.

67. Defendants are unauthorized users of the Nationwide Marks and Nationwide cannot exercise any control over the nature and quality of Defedants' insurance products and services or any insurance products and services Defendants offer through other companies.

68. Upon information and belief, Defendants' false designation of origin has been willful and deliberate, designed specifically to trade upon the consumer goodwill enjoyed by Nationwide.

69. Nationwide's consumer goodwill is of enormous value, and Nationwide will suffer irreparable harm if Defendants' false designation of origin as to the Nationwide Marks is allowed to continue.

70. Defendants' false designation of origin will likely continue unless enjoined by this Court.

71. Nationwide is entitled to a preliminary and permanent injunction against Defendants, as well as all other remedies available under the Lanham Act, including but not limited to compensatory damages; treble damages; disgorgement of profits; corrective advertising and costs and attorney's fees.

WHEREFORE, Plaintiffs request that the Court order:

1. The issuance of a preliminary injunction, and thereafter a permanent injunction enjoining Defendants and, each of them, their agents, servants, employees, successors, representatives and assigns, and all others in concert and privity with them from using the mark Nationwide in any manner in advertising, promoting or sale of any insurance or financial services, infringing or falsely designating the origin of the Nationwide Marks, and from injuring Nationwide's reputation;

2. That Defendants, jointly and severally, account to Nationwide for their profits, the actual damages suffered by Nationwide and as a result of Defendants' acts of infringement or false designation of origin, together with interest and costs, and that such damages be trebled because of the willful acts described above, which acts were committed in knowing disregard of Nationwide's known rights;

3. That Defendants air and publish corrective advertising, in a manner, form and at times equivalent to past advertising, in an amount equal to twice the money spent by Defendants on advertising containing the NATIONWIDE mark to date;

4. The issuance of a preliminary injunction, and thereafter a permanent injunction, enjoining defendants from using any of the Nationwide Marks or any term that includes the word "Nationwide" for insurance products and services or otherwise engaging in acts or conduct that would cause confusion as to the source, sponsorship or affiliation of Nationwide with Defendants;

5. That Defendants surrender all copies of any materials mentioning insurance products or services that they have created or obtained bearing the NATIONWIDE mark for destruction, and that they be enjoined from creating, purchasing or acquiring such materials in the future or placing them on a website;

6. That Defendants contact all state insurance regulatory bodies in the states where Defendants have done business and advise them that they are not connected or affiliated with Nationwide;

7. That NBP provide a list of all policies issued and purchasers of insurance products and services sold using the Nationwide Benefit Plans name and send each holder of any policy or purchaser of such services a letter, approved in advance by Nationwide, advising that they are not connected or affiliated with Nationwide;

8. That Defendants pay compensatory and treble damages to Nationwide;

9. That Defendants disgorge all profits realized from the sale of their insurance products and services using the Nationwide name and/or mark;

10. That Defendants pay Nationwide's attorneys' fees, together with the costs of this suit;

11. That all of Defendants' domain names that include the word "Nationwide" or any variant be turned over to Plaintiffs; and

12. All other and further relief as may be just and equitable.

Respectfully submitted,

*[signature]*

Joseph R. Dreitler, Trial Attorney (0012441)
Brian J. Downey (0069163)
Mary R. True (0046880)
Frost Brown Todd LLC
One Columbus, Suite 2300
10 West Broad Street
Columbus Ohio 43215
jdreitler@fbtlaw.com
bdowney@fttlaw.com
mtrue@fbtlaw.com

Phone: (614) 559-7280
Fax: (614) 464-1737

Attorneys for Plaintiffs, Nationwide Mutual Insurance Company, Inc., *et al.*

ColLibrary 149030.1